PASCHALL et al. v. BROWN.†

(Court of Civil Appeals of Texas.  Dec. 8, 1910.  Rehearing Denied Jan. 5, 1911.)

1. HUSBAND AND WIFE (§ 267*)—COMMUNITY PROPERTY—SALE OF INTEREST AND PARTITION BY HUSBAND.

Land conveyed to a married man not being his wife's separate estate, he has the right to sell an undivided or specific half thereof without her consent, provided in so doing no part of the actual homestead is conveyed; so that, they having conveyed an undivided half thereof, he may, without her consent, so long as her homestead rights are respected, make a partition of the land with the grantee.

[Ed. Note.—For other cases, see Husband and Wife, Cent. Dig. § 930; Dec. Dig. § 267.*]

2. HOMESTEAD (§ 117*) — CONVEYANCE — CONSENT OF WIFE.

D. and wife conveyed to S. an undivided half of a tract of 860 acres, all of which was the community property of D. and wife, and on which was their home. Thereafter D., without the knowledge of his wife, but acting in good faith as to her homestead rights, made a partition agreement with S., whereby there was allotted to D. 125 acres in the lower half of the tract, and the balance of his half in the upper half of the tract; the remainder being allotted to S. Thereof D. and his wife, who was still ignorant of the partition, and S. sold and conveyed to K. the upper half of the tract. Held, that the fact that the sale to K. reduced the homestead to less than 200 acres did not entitle the wife of D. to make up the deficiency out of the part allotted to S., in whom the fee thereto had been vested by the partition.

[Ed. Note.—For other cases, see Homestead, Cent. Dig. § 191; Dec. Dig. § 117.*]

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key No. Series & Rep'r Indexes

† Writ of error granted by Supreme Court.

**3. TRIAL (§ 143*)—DIRECTION OF VERDICT—CONFLICT IN EVIDENCE.**

An equivocal statement, not sufficient to raise more than a surmise that a fact is different from what it is otherwise shown by the other evidence to be, is insufficient to raise a conflict in the evidence, preventing direction of a verdict.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 342, 343; Dec. Dig. § 143.*]

**4. EXECUTION (§ 344*)—SALE—NOTICE — EVIDENCE—RETURN.**

That the sheriff's return does not show that notice in writing was given the defendants of an execution sale is not conclusive that proper notice was not given.

[Ed. Note.—For other cases, see Execution, Cent. Dig. §§ 1033, 1037; Dec. Dig. § 344.*]

Appeal from District Court, Colorado County; M. Kennon, Judge.

Action by Walter F. Brown against Mrs. Maud Paschall and others. Judgment for plaintiff. Defendants appeal. Affirmed.

Grobe & Boyd and Adkins & Green, for appellants. Carothers & Brown, for appellee.

McMEANS, J. Suit of trespass to try title brought by appellee against the appellants for a part of the Hagan survey in Colorado county, Tex.

The testimony warrants the following findings of fact: On October 9, 1897, Stafford conveyed to D. A. Paschall the whole of the Hagan survey, in Colorado county, Tex., said survey containing 860½ acres, and on September 26, 1899, D. A. Paschall, joined by his wife, Maud Paschall, one of the appellants herein, executed a deed to S. H. Paschall, by which they conveyed to him an undivided one-half of this survey, reserving to the said D. A. Paschall a life estate therein. Some time during 1901 S. H. Paschall married, and D. A. Paschall and S. H. Paschall then decided to divide the said Hagan survey. D. A. Paschall was then living in a house on the western part of the lower half of the survey, and there was a fence east of his house, and running north from the south line of the Hagan survey, 667 yards. They agreed that this fence should constitute the dividing line between them as far as it went, and from the north end of this fence the dividing line was to run to the north line of the Hagan survey at such an angle as would divide the Hagan survey into two equal portions, so that half of the survey would be on the east of this line and the other half would be west of this dividing line. The east part was to belong to S. H. Paschall and the west part to D. A. Paschall. During that same year S. H. Paschall built a house worth $800 or $900 on his half, and also built some fences and made other improvements on the land. S. H. Paschall then went into possession of this land on the east side and lived there two or three years, and he lived there and had tenants there at all times thereafter, his tenants being in possession of his half when the deed

to Kemper, hereinafter mentioned, was made in 1907. Six years after the partition was made, on June 21, 1907, D. A. Paschall and wife, Maud Paschall, and S. H. Paschall and wife, Ethel Paschall, executed to B. H. Kemper a deed by which they conveyed to him the north half of the Hagan survey, Kemper's south line running due east and west. On September 4, 1907, E. B. Carruth and Sam Lewis brought suit against D. A. Paschall and S. H. Paschall to recover on a promissory note, and an attachment was issued on the same day. This writ of attachment was levied on the interest of D. A. Paschall in the south half of the survey, and also the interest of S. H. Paschall in the same land. On October 3, 1907, the plaintiffs recovered judgment against D. A. and S. H. Paschall in this suit, and on November 12, 1907, execution was issued on the judgment, and was levied on the interest of D. A. Paschall in the lower or southern half of this survey, and also on the interest of S. H. Paschall in the lower or southern half of the survey. Subsequently, on December 3, 1907, the said interests were sold under execution, and the appellee became the purchaser of the said interest of the said D. A. Paschall and also of the interest of the said S. H. Paschall, said interests being sold separately. The appellee then filed suit in trespass to try title against these parties. A trial was had, and D. A. Paschall went on the stand, and testified to this verbal partition, claiming that he no longer owned an undivided interest in the land, but that he claimed as his homestead the land lying west of this agreed line. The result of this trial is not shown by the record, but subsequently the appellee purchased from S. H. Paschall his entire interest in the Hagan survey. D. A. Paschall died, and his children were made parties to the suit, but Mrs. Maud Paschall sought to avoid the sheriff's sale on the ground that notice had not been properly served and because the land sold at the execution sale was the homestead of her husband and herself, and she claimed that, when she signed the Kemper deed, she did so in ignorance of the fact that it would reduce her homestead to less than 200 acres, and, further, that her husband had misled her into signing the Kemper deed. The testimony showed that the land lying west of the agreed line and south of the Kemper tract was less than 200 acres, and appellee then conceded that, as Mrs. Paschall and her husband were living on this land when the attachment was levied and when the execution sale was made, the sheriff's sale did not vest the title to this land west of the dividing line in appellee, and the appellee requested the court to charge the jury to return a verdict in his favor for the Sam Paschall land lying east of the agreed line, and in favor of Mrs. Paschall and the children of D. A. Paschall and Maud Paschall for the D. A. Paschall land lying west of said

line. The court granted this instruction, and the jury returned a verdict in accordance therewith. Judgment was rendered in accordance with the verdict, and Mrs. Maud Paschall and her minor children, Gonboldin A. and Dallas O. Paschall, have appealed.

By their first assignment of error appellants complain of the charge of the court peremptorily instructing a verdict for the plaintiff for the land lying east of a certain dividing line. Their contention as asserted by the first proposition under the assignment is as follows:. "Where husband and wife own and have a home upon an undivided one-half interest in a tract of over 860 acres, and own a life estate in the whole 860 acres, the husband cannot, without the consent and joinder of the wife and secretly without her knowledge, agree upon a division line with the owner of the fee only to an undivided one-half· interest in said 860 acres of land, and afterwards said cotenant and said husband make such a deed to a third party as would, because of the direction of said secret line, deprive the wife of her homestead of at least 200 acres, the wife joining in said deed in utter ignorance of the fact that said deed in connection with said secret line would deprive her of her homestead."

The evidence shows that D. A. Paschall being the owner of 860 acres of land, joined by his wife, conveyed an undivided half interest therein to his son, S. H. Paschall, reserving a life estate therein during the life of D. A. Paschall; that D. A. Paschall then lived in the western end of the 860 acres, and near the western line of the tract; that subsequently to the deed of conveyance and after the son, S. H. Paschall, had married, D. A. Paschall and S. H. Paschall made a verbal partition of the land between themselves, the partition line beginning at the southern end of the 860 acres at a fence much nearer the southwestern than to the southeastern corner, thence running north with the fence as far as the fence extended, thence to the northern line of the 860 acres at such an angle as to divide the 860 acres into two equal portions, so that half of the survey would be east of this line and half west of it, and the eastern portion was to belong to D. A. Paschall and the western portion to S. H. Paschall. D. A. Paschall had his homestead and improvements on the western portion, which comprised 430 acres. Several years after this partition was made, D. A. Paschall, joined by his wife, the defendant in this suit, and S. H. Paschall, joined by his wife, conveyed the northern half of the 860 acres to B. H. Kemper, the latter's south line running due east and west through the center of the 860-acre tract. At this time the appellant, Mrs. Maud Paschall, did not know that her husband, D. A. Paschall, and S. H. Paschall, had partitioned the land between themselves. Owing to the way the partition line ran after the northern end of the fence had been reached, the angle being about northeast from that

point, the largest part of the tract sold to Kemper was east of the division line, and was taken off of D. A. Paschall's half, so that after Kemper bought the land remaining unsold on the eastern side of the line amounted to only about 125 acres. As before stated, S. H. Paschall, after the partition, built a house on the eastern half, and with his wife lived thereon and continuously occupied the same in person or by tenants up to the time of the execution sale at which appellee acquired the interest asserted in this· suit. As before stated, D. A. Paschall's half of the land, after the partition, contained 430 acres. In view of this, we think that he had a lawful right to make the partition that was made without the consent of his wife, and that the partition was valid, and vested the fee to the eastern half in S. H. Paschall. There was no evidence to show that in making the partition any of the homestead improvements were included in the portion allotted to S. H. Paschall, or that the husband acted in the matter other than in good faith as to the rights of the wife in the homestead. The husband and wife had a lawful right to sell a part of the homestead, and, if the sale to Kemper reduced the homestead to less than 200 acres, this would not justify the appellants in making up the deficiency out of the portion which had been allotted to S. H. Paschall, and in whom the fee had vested six years before. Mass v. Bromberg, 28 Tex. Civ. App. 145, 66 S. W. 468; Aycock v. Kimbrough, 71 Tex. 330, 12 S. W. 71, 10 Am. St. Rep. 745. The land not being Mrs. Paschall's separate estate, D. A. Paschall had the right to sell an undivided or specific half without the consent of his wife, provided in so doing no part of the actual homestead was conveyed; and having conveyed, as he and his wife did, an undivided half, he had the right to agree to a partition without the consent of his wife, provided her homestead rights were respected.

What we have said above disposes of appellants' second proposition under the first assignment adversely to their contention.

Appellants' third proposition is as follows: "It is the sole province of the jury to pass upon the weight of the evidence, and, where the evidence is conflicting, it is error for the court to charge the jury to find for either party." This is a sound proposition, and should be sustained if the testimony was conflicting on any material point. D. A. Paschall died before the trial, but had testified at a former trial, and his testimony then given was attempted to be reproduced by the plaintiff, Brown, and the defendant Mrs. Paschall. The former testified that D. A. Paschall had testified that the partition line was agreed upon as hereinbefore detailed, and the latter that she believed he testified that the line agreed upon was run so as to divide the land in suit in two equal portions, and, in corroboration of her testimony, the defendants introduced in evidence a trial

amendment of D. A. Paschall, which was filed before he testified, in which he claimed a homestead exemption in part of the land sued for, describing it as follows: "Beginning at a point where a fence intersects the south line of the land in suit; thence northwardly along said fence, which fence forms the east line of defendant's calf pasture, to its northern termination; thence in a straight line to the north line of the Hagan survey at such an angle as to divide the land in suit into halves, all of the land west of said line being occupied by defendant as his homestead as aforesaid." The only testimony as to the location of the partition line was that of D. A. Paschall, which was given on the former trial. We think, if it be conceded that in testifying he described the line as being run so as to divide the land in controversy in equal portions that he used the words "in suit" inadvertently, but that he intended to describe the line that divided the entire 860 acres in equal portions, the trial amendment, as well as all the evidence in the case, fixes the beginning point at a place on the southern boundary line of the Hagan survey where it was intersected, by a fence, and that the line runs northwardly with the fence to its northern terminus. This fence according to all the evidence, and especially with reference to the plat or sketch made by D. A. Paschall himself, was much nearer the western than the eastern line of the 860 acres, and it was evident that, whatever the direction the line should take after it reached the northern end of the fence, the fence must be followed until that point is reached. From that point it would be physically impossible to run a line to the northern line of the 860 acres so as to divide the southern half in two equal portions. The partition was made in 1901, and at that time D. A. Paschall and S. H. Paschall jointly owned the entire 860 acres. It was six years after the partition was made before the north half of the survey was sold to Kemper. According to all the testimony, the entire 860 acres was partitioned. That a portion of the northern half sold to Kemper had been allotted to S. H. Paschall in the partition was evidenced by the fact that he joined in the Kemper deed. In view of all this, we think that the equivocal statement of Mrs. Paschall that she believed D. A. Paschall testified that the line was to be run so as to divide the land "in suit" in equal portions was not sufficient to raise more than a surmise that the line was not established as contended by plaintiff, and that, therefore, the court did not err in peremptorily instructing a verdict. Appellants complain that the verdict and judgment are contrary to the law and the evidence for the reason that the sheriff's return of execution, under which appellee, by purchase at sheriff's sale, acquired the title asserted by him in this suit, shows that the first publication of the notice of sale was on the 12th day of November, 1907, and the date of the sale was December 3, 1907, 20 days between the dates not intervening, and that the sheriff's return failed to show that the sheriff gave notice in writing by mail or otherwise to the defendants or their attorneys at least 20 days before the sale, which, taken in connection with the fact that appellee only paid $25 for the land, should avoid the sale.

There was no evidence introduced as to the value of the land, or, if there was, it is not pointed out by appellants in their brief. The only statement subjoined to the assignment is one adopting the assignment itself as a proposition, which is not sufficient. Appellants are clearly wrong in asserting that 20 days did not intervene between the 12th of November, the date of publication, and 3d of December, the date of sale. The fact that the sheriff's return may not show that notice in writing was given to the defendants is not conclusive that proper notices were not given. Whether the sale was regular can make no difference in view of the fact that S. H. Paschall subsequently to the sheriff's sale voluntarily sold and conveyed to appellee the land awarded to him by the court below, which is situated east of the division line, and the appellants recovered all the land west of said line that was not sold to Kemper. The assignment is overruled.

We have examined all the other assignments presented by appellants, and are of the opinion that no reversible error is pointed out in any of them.

Before the submission of this case appellee presented a motion to dismiss the appeal on two grounds; the first being that the certificate of the clerk of the court below to the transcript is insufficient, and, second, because the appeal bond was not payable to all parties adversely interested in the subject-matter of the suit. We have carefully considered the motion, which we took under submission with the case, and are of the opinion that the same should be overruled, and it has been so ordered.

The judgment of the court below is affirmed.

Affirmed.