### MRS. MAUD PASCHALL ET AL. V. WALTER F. BROWN.

No. 2237.   Decided May 29, 1912.

**1.—Boundaries—Partition—Question of Fact.**

The trial court could direct the verdict fixing a boundary line in controversy in accordance with a partition made by the owners, only when the evidence was not sufficient to raise any issue as to the existence and exact location of such line. (Pp. 248, 249.)

**2.—Same.**

Evidence considered and held to present an issue of fact as to the establishment and location of a boundary line by oral partition between owners . in common—the evidence supporting the claim to such line being not uncontroverted and consisting of the former evidence of a deceased party as a witness, reproduced by the testimony of an interested party, and of a character which the jury were not bound to accept though not contradicted. (Pp. 249-252.)

Error to the Court of Civil Appeals, First District, in an appeal from Colorado County.

Mrs. Paschall and others obtained writ of error on a judgment affirming, on their appeal, a recovery against them by Brown in a suit for land.

*Grobe & Bond* and *Adkins & Green,* for plaintiff in error.

*Carothers & Brown,* for defendant in error.

MR. JUSTICE DIBRELL delivered the opinion of the court.

This suit was brought on January 8, 1908, in the District Court

of Colorado County, by Walter F. Brown against D. A. Paschall, Maud Paschall, S. H. Paschall and Ethel Paschall to recover a certain tract of land, a part of the Elija J. Hagan survey, contained within named metes and bounds, but not disclosing the number of acres sued for.

On September 23, 1909, the plaintiff filed his second amended original petition in which Gonboldin A. Paschall and Dallas O. Paschall, minors, were made parties in lieu of D. A. Paschall, who had departed this life pending the suit. The defendants, S. H. and Ethel Paschall, having disposed of their interest in the land sued for pending the suit, made no answer as far as the record discloses. The defendants, Maud Paschall and her minor children, pleaded in defense to plaintiff's cause of action the general denial or not guilty, and the homestead claim. Other defensive pleas were interposed, which we will not mention, as they have no bearing on the case as we shall treat it.

Upon the trial of the cause with a jury, at the request of plaintiff, the court gave a peremptory instruction as follows: "You are charged to find a verdict for the plaintiff for all of the land described in plaintiff's second amended original petition, which lies east of a line described as follows: Beginning at a point on the south line of the Elija J. Hagan survey in Colorado County, Texas, 328 yards from the southwest corner of said survey, said point being at the southernmost end of the fence which runs northerly and southerly between the residence now occupied by Mrs. Maud Paschall and that formerly occupied by S. H. Paschall as a homestead; and running thence north along the line of the said fence to the northernmost end thereof; thence running in a straight line to the north line of the said Hagan survey at such an angle as will divide the said Hagan survey into two equal portions; and you will find for the defendant, Mrs. Maud Paschall, for the remainder of the land described in plaintiff's said petition."

In compliance with the court's charge as requested by plaintiff's counsel, the jury rendered their verdict. Upon appeal to the Court of Civil Appeals the cause was on the 8th day of December, 1910, affirmed (133 S. W., 509), and is in this court on writ of error granted February 2, 1911.

In granting the writ of error this court entered on its docket the following notation. "We incline to think courts below were not authorized to assume that the partition between D. A. and S. H. Paschall was conclusively established, as plaintiff contended it was."

Our disposition of the case will be based upon the assignment which raises the issue as to the authority of the trial court to assume that the evidence conclusively established the parol partition between D. A. and S. H. Paschall in the manner set forth in the instruction directing a verdict, and thereby to withdraw the issue from the jury. If the evidence was not sufficient to raise any issue as to the existence and exact location of the partition or division line between D. A. and S. H. Paschall, then the action of the court was correct, unless there were other issues made by the pleadings and evidence that called for a finding by the jury, which we do not undertake to

determine. On the other hand, if there was any evidence of sufficient substance to warrant a finding by the jury that such partition or division line as that contended for by plaintiff and embodied in the court's instruction, was not established, or that the division line was agreed upon by the parties materially different from that sought to be established by the plaintiff, then the instruction directing the jury to find a given line as the one agreed upon and to award the land lying east of such line to plaintiff and that lying west of such line to defendant, was clearly erroneous.

That a clear understanding may be had of the question involved we will make a brief statement of the case. On the 9th day of October, 1897, D. A. Paschall, the husband of the defendant Maud Paschall and father of the minor defendants, purchased 860 acres of land, and on September 26, 1899, said D. A. and Maud Paschall conveyed an undivided half-interest in said tract of land to their son, S. H. Paschall, reserving therein a life interest. On June 21, 1907, D. A. Paschall, his wife, Maud Paschall; S. H. Paschall and his wife, Ethel Paschall, conveyed to D. H. Kemper 430 acres of the 860 acre tract, taken from the northern portion of said tract, leaving the southern portion of said tract, consisting of a like number of acres. Of this tract D. A. Paschall and his family occupied the western portion and S. H. Paschall and his family the eastern portion.

Plaintiff's claim to the land sued for, which seems to have been all of the original tract of 860 acres less the 430 acres sold to Kemper, was based at the beginning of the suit on certain attachment proceedings in the justice's court, the recovery of a moneyed judgment against D. A. and S. H. Paschall in said court and sale of the entire interest of both D. A. and S. H. Paschall in said 860 acre tract of land, less the 430 acres sold to B. H. Kemper; and before the final trial reliance was had upon the purchase of the interest of the defendants, S. H. and Ethel Paschall.

The plaintiffs recognized the homestead claim of the defendant, Mrs. Maud Paschall and her children, but contended for a partition or division line of the 430 acres left after the sale to Kemper, which as matter of fact left the defendant only 125 acres. In explanation of this contention it was claimed that in 1901 D. A. Paschall and S. H. Paschall, the joint owners of said 860 acres, made a parol partition of same, by the terms of which D. A. Paschall took the western half and S. H. Paschall the eastern half. This division line was claimed to be on a fence which ran between D. A. Paschall's house and a house which was erected by Sam Paschall on the eastern portion of the tract, as far as such fence extended north and from the north end of this fence the line ran to the north line of Elija J. Hagan survey at such an angle as would divide Elija J. Hagan's survey into two equal portions, so that half of the survey would be on the east of this line and the fence and the other part on the west of such line and fence. The land west of said line was the property of D. A. Paschall and that on the east was the property of S. H. Paschall.

It was contended that when D. A. and S. H. Paschall, joined by their wives, conveyed the northern half of said 860 acre tract to Kemper more of D. A. Paschall's land was embraced in such deed

than of S. H. Paschall, and hence that of the lower half according to the former parol agreement D. A. Paschall had left less area than his son, S. H. Paschall. The following plat will better illustrate the contention:

To authorize the instruction given the jury by the court at the request of plaintiff's attorneys it was essential that there should be no controverting evidence as to the parol partition and the location of the division line, and that the evidence by which such uncontroverted facts were established should be of such character as to be

conclusive.  We not only think there was controverting evidence, but that without such evidence the circumstances of this case did not authorize the trial judge to take from the jury their discretionary power to say whether they would or not give credit to the only testimony produced by the plaintiff to establish the important facts of the parol partition and the location of the division line, which consisted of the words of a deceased witness at a former trial picked up and reproduced by an interested party.  Had the facts of this case been submitted to the jury and they had found contrary thereto, without the statement of Mrs. Maud Paschall, we would not feel warranted in disturbing such finding.

The entire testimony on this issue ·consisted of the introduction in evidence of the trial amendment of D. A. Paschall filed in the cause and the testimony of plaintiff and defendant, Mrs. Maud Paschall, as follows: ''Now comes the defendant, D. A. Paschall, and with leave of the court files this his trial amendment, and respectfully represents that at the time of the levy of the attachment and the execution, under which plaintiff claims and for a long time previous and subsequent thereto, the following portion of the land sued for has been · and was the homestead of defendant and his wife, to-wit: Beginning at a point where a fence intersects the south line of the land in suit; thence northwardly along said fence, which fence forms the east line of defendant's calf pasture to its northern termination; thence in a straight line to the north line of the Hagan survey at such an angle as to divide the land in suit into halves; all of the land west of said line being occupied by defendant as his homestead as aforesaid.''

In addition to the foregoing the statement of the plaintiff in reproducing the testimony of D. A. Paschall, deceased, who testified at a former trial of this cause, was as follows: ''On a former trial of this case Dr. Paschall testified that some time during the year 1901, Sam Paschall, his son, was married and that Dr. Paschall then was residing on the western part of the lower half of this survey and that he and Sam Paschall agreed on a line.  He testified that he agreed to give Sam Paschall one-half of this land and that they agreed as a division line on a fence which ran between his house and between a house which was erected by Sam Paschall a very short time thereafter; that this fence ran practically as it does now except that it was, a short time afterwards, extended a short distance north, and that Sam Paschall erected his house a short distance east of this fence.  This fence was to be the division line between D. A. and Sam Paschall as far as it went, and from the north end of this fence, the line ran to the north line of the Elija J. Hagan survey at such an angle as would divide the Elija J. Hagan survey into two equal portions, so that half of the survey would be on the east of this line and of the fence and the other part west of that would be west of that line and the fence.  The part that lay east of this division line would be S. H. Paschall's land and that part lay west of it would be D. A. Paschall's land.  That shortly thereafter, during the same year, S. H. Paschall built a house on this land and built some fences and made some other improvements on said land  *  *  *  And

later on I assisted in making a survey of this land and measured the distance from the southwest corner of the Elija J. Hagan survey to the fence referred to and the distance was 328 yards, and then we measured the fence which ran north and south as far as it went and the distance was 667 yards from the south end of the fence to the north end of the fence.''

Mrs. Maud Paschall, defendant, testified on this issue as follows: ''I did not know of the partition of the Hagan survey between my husband and Sam Paschall, as testified to Mr. Brown, in reproducing Dr. Paschall's testimony. I knew of no such division at the time that I joined my husband and Sam Paschall and his wife in the deed to Mr. Kemper. At the time this deed was executed, my husband stated to me that in selling the north half of the land to Kemper, it would leave the other half to be divided between Sam and himself; and, that in selling this land, we would still own a one-half interest in the southern part. And because of these representations, I executed the Kemper deed. The understanding was that the southern half would be divided in halves after the north half was sold to Kemper, that is, the south half, after said sale, would be divided equally between Dr. D. A. Paschall and Sam Paschall.''

''I did not know of the verbal agreement or partition made by Dr. Paschall with Sam Paschall. The first time I ever heard of it was during Dr. Paschall's testimony at last trial. I cannot say he testified practically as you have stated; I do not believe that I know. I believe he testified that he agreed that the line would be run so as to divide the land in suit into two equal portions.''

M. M. Fields, a surveyor, testified that a line run as contended for by plaintiff as the divisional line between D. A. and S. H. Paschall would leave not over 125 acres on the west side of that line and south of the Kemper tract.

From the statement of Mrs. Paschall it seems to us the jury might have found for the defendants. At all events, the jury might have concluded from the evidence that the agreement between the father and son to partition the 430 acres after the sale to Kemper was by such a line as would give each an equal portion of the land. They might have drawn this conclusion from several circumstances in addition to the statement of Mrs. Paschall that she understood the agreement to be that the land south of the Kemper tract was to be equally divided between the two. This seems to be borne out by the pleadings of D. A. Paschall, introduced in evidence by the plaintiff. Then again so far as the record shows, D. A. and S. H. Paschall participated equally in the purchase price for which the land was sold to Kemper. This is inferrable from the deed and there is nothing in the record to show that D. A. Paschall received any more of the purchase money from Kemper than was received by his son. Whatever view may be taken of the case we think the charge requested by the plaintiff's attorney and given by the court invaded the province of the jury and thereby took from defendants a substantial right, namely, that of having the controverted issues of the case determined by the verdict of the jury. The defendants having been deprived of a substantial right the only redress that can be awarded them is a

new trial. It is the order of this court that the judgments of the trial court and the Court of Civil Appeals be reversed and the cause remanded for another trial.

*Reversed and Remanded.*